

FILED
OCT 22 2013
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

LAURA E. DUFFY
United States Attorney
Emily J. Keifer
Assistant U. S. Attorney
California Bar No. 271107
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-7319

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE DISCLOSURE OF SUBSCRIBER AND OTHER INFORMATION

Re: Phone # 152*9*12607

No. '13 MC 1283

APPLICATION FOR ORDER AUTHORIZING DISCLOSURE OF SUBSCRIBER AND OTHER INFORMATION

The United States of America, by its attorneys, Laura E. Duffy, United States Attorney, and Emily J. Keifer, Assistant U.S. Attorney, hereby applies to the court for an Order directing Sprint Nextel, an electronic communication service provider which, among other things, provides cellular communications services to its subscribers, to provide to Special Agents of Homeland Security Investigations subscriber and other historical information regarding the cellular telephone currently bearing telephone number 152*9*12607 (hereinafter referred to as the "subject telephone").

In support of this Application, the applicant states as follows:

1. I am an "attorney for the government" as defined in Rule 1(b)(1)(B) of the Federal Rules of Criminal Procedure and authorized to apply for the instant Order.

2. Homeland Security Investigations is conducting a criminal investigation into the user and/or subscriber of cellular telephone number 152*9*12607 which may constitute violations of Title

21, United States Code, Sections 952 and 960. This application is to obtain subscriber information, cell site and other information from Sprint Nextel, an electronic communication service provider within the meaning of Title 18, United States Code, Section 2510(15) which provides cellular telephone services regarding the subject telephone (hereinafter referred to as "the service provider").

3. Inasmuch as the requested Order will require the service provider to disclose subscriber and other information about a subscriber, including cell site location information from its historical databases, the applicant offers the following specific and articulable facts showing that there are reasonable grounds to believe that the requested information is relevant and material to the ongoing criminal investigation, as required at Title 18, United States Code, Section 2703(c) and (d). I have been informed by Special Agents of Homeland Security Investigations and believe that:

a. On April 5, 2013, at approximately 4:45 p.m., a U.S. Customs and Border Protection Officer (CBPO), was assigned to primary vehicle lane #11B at the San Ysidro, CA Port of Entry. The CBPO screened a gray Honda Accord bearing MM/BC license plates BHP3148. The driver and sole occupant of the Honda was identified as Juan ANDRADE Cordero. The CBPO received two negative declarations and noticed that the vehicle key was separate from other keys. The CBPO referred the vehicle to the secondary lot for further inspection.

b. In the secondary inspection area at the San Ysidro, CA POE, a CBPO performed a seven point inspection on the gray Honda Accord and discovered a muddy section in the engine compartment. The CBPO removed a part of the mud and noticed a white plastic bag containing a black plastic bundle. The CBPO probed the black bundle with a knife and discovered a white crystalline substance. A CBPO subsequently observed a second package and removed it as well. Both packages field tested positive for Methamphetamine.

c. The two packages of suspected methamphetamine had an aggregate weight of

4.5 kilograms.

d. ANDRADE Cordero was arrested and charged with violation of Title 21, United States Code, Sections 952 and 960. Two telephones were seized incident to ANDRADE Cordero's arrest. The number that belongs to one of the telephones is 152*9*12607.

e. Post-arrest, after being advised of his Miranda rights, ANDRADE Cordero stated that he was a mechanic and that the vehicle belonged to a customer of his. ANDRADE Cordero stated that the customer was female, but that he did not recall her name. ANDRADE Cordero said that the unidentified female had picked him up that morning and that they drove together to the border and entered the line to cross into the United States. While they were waiting in the line, the unidentified female's two-way radio chirped. ANDRADE Cordero stated that she exited the vehicle and indicated that she was going to cross the border and meet up with him on the U.S. side of the border. ANDRADE Cordero stated that she gave him money to pay for the one-day insurance for the vehicle as she left.

f. ANDRADE Cordero stated that he had crossed the Honda into the U.S. two days prior, on Wednesday, April 3, and that he drove the Honda to the Autozone auto-parts store in San Ysidro. ANDRADE Cordero stated that his purpose for crossing into the U.S. on April 3 was to find part numbers and prices for the engine mounts that needed to be replaced in the Honda. ANDRADE Cordero stated that he received receipts with the information on it, and that he gave the receipts to the unidentified female when he returned to Mexico with her vehicle.

g. ANDRADE Cordero indicated that he was crossing today, April 5, in order to purchase the parts and to purchase parts for a minivan, which belonged to another customer. ANDRADE Cordero stated that he was buying parts in the U.S. because they were cheaper than in Mexico.

h. ANDRADE Cordero stated that he had only met the unidentified female three times and repeated that he did not recall her name. ANDRADE Cordero then stated that the unidentified female entered another vehicle after leaving the Honda. ANDRADE Cordero stated that the vehicle was also waiting in line approximately three lanes over from the Honda. ANDRADE Cordero described the vehicle as a green 4-door Hyundai. ANDRADE Cordero stated that he could not see the license plates because of the rail dividing the lanes.

i. ANDRADE Cordero stated that he did not lift the hood to inspect the engine compartment when the unidentified female picked him up that morning. ANDRADE Cordero indicated that the attendant at Autozone would eventually look under the hood in order to match up the part numbers of the engine mounts that needed to be replaced. ANDRADE Cordero insisted that this is why they crossed the Honda into the U.S. and not a different vehicle, to ensure that they purchased the correct part.

j. ANDRADE Cordero denied knowledge of the narcotics, and stated that if he knew that drugs were in the vehicle he would not have driven the vehicle into the U.S.

k. When shown the registration taken from the Honda, ANDRADE Cordero identified the name on the registration, Marvicha Lorena SAMAGO Castro, as the name of the unidentified female. The registration information was found in the driver's side door of the Honda. ANDRADE Cordero stated that he drove the Honda instead of SAMAGO Castro because the Honda was not in good shape.

l. ANDRADE Cordero stated that he did not speak with SAMAGO Castro while they waited in line to cross into the U.S. because he did not want to seem like he was "hitting on her." ANDRADE Cordero stated that they were in line for approximately forty-five minutes. ANDRADE Cordero stated that he did not think it was odd that SAMAGO Castro exited the vehicle while they were

waiting to cross, even though he did not have a way to contact her.

m. I believe that ANDRADE Cordero as well as other persons known and as yet unknown, were involved in an on-going conspiracy to import, transport, possess, and distribute methamphetamine throughout the State of California. I also believe that ANDRADE Cordero used his telephone to coordinate with co-conspirators regarding the transportation and delivery of the methamphetamine, and to otherwise further this conspiracy both inside and outside the United States.

4. Accordingly, the applicant requests that this Court issue an Order:

a. Directing the service provider to disclose published and non-published subscriber information for the subject telephone to include: subscriber name; address; local and long distance connection records; length of service (including start date) and types of service utilized; incoming and outgoing push to talk direct connect records; telephone or instrument number or other subscriber number or identity; and means and source of payment for such service (including any credit card or bank account number);

b. Directing the service provider to disclose records of cell site activations by the subject telephone during the period from January 1, 2013 up to and including and April 6, 2013;

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information and belief.

Dated: 10/21/13

Emily J. Keifer
Assistant United States Attorney